1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

KATHRYN ROBERTS,

                Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

1:09cv01581 DLB

ORDER REGARDING PLAINTIFF'S
SOCIAL SECURITY COMPLAINT

## BACKGROUND

    Plaintiff Kathryn Roberts ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

    Plaintiff filed her application for SSI on March 28, 2006.  AR 108-14.  She alleged disability since August 1, 2002, due to diverticulitis, fibromyalgia, valley fever and back/neck problems.  AR 136-37.  After being denied initially and on reconsideration, Plaintiff requested a

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1  hearing before an Administrative Law Judge ("ALJ").  AR 70-73, 75-79, 82.  On September 30,

2  2008, ALJ James P. Berry held a hearing.  AR 15-57.  ALJ Berry denied benefits on March 2,

3  2009.  AR 5-14.  On July 10, 2009, the Appeals Council denied review.  AR 1-4.

4         Hearing Testimony

5         ALJ Berry held a hearing on September 30, 2008, in Fresno, California.  Plaintiff

6  appeared with her attorney, Jeffrey Milam.  AR 8, 17.  Vocational expert ("VE") Judith Najarian

7  also appeared and testified.  AR 8, 17, 47-52.

8         At the time of the hearing, Plaintiff was 54 with a twelfth-grade education.  She testified

9  that she lives with her mother and ex-husband.  She has a driver's license.  She drives to the

10  grocery store twice a week, but her mother drives her to the doctor.  AR 19-20.

11        Plaintiff is 5'5" and weighs 173.  She reported gaining 50 pounds in the last year because

12  she did not exercise due to pain.  AR 21.

13        At the hearing, Plaintiff had a long wooden staff with a handle.  Although Dr. Owens

14  prescribed a cane, Plaintiff claimed that the staff helps more.  Plaintiff also had an ace bandage

15  loosely wrapped around her left wrist.  She pulled it off, showing a band of seven popsicle sticks

16  tied together to hold her wrist straight.  Plaintiff said that she has never been prescribed braces

17  for her wrist.  Although she has told or shown her doctor, he has never said why he did not

18  prescribe something more formal.  AR 21-22.

19        Plaintiff testified that she last worked at Kaweah Delta Lifestyles in 2002 as a

20  housekeeper.  She stopped working because of pain in her upper stomach.  In 2006, she tried

21  operating a computer business at home, but her computer broke.  Plaintiff characterized the

22  business as online sales of drop-shipping.  In that business, she would take orders, send them to a

23  company and the company would send them on to the person.  Money would be sent to PayPal.

24  Plaintiff would collect her part of the money and PayPal would "collect their part of the money."

25  Although she worked three hours a day for a whole year, she never received any money from her

26  computer-related work.  She has not worked since then.  AR 22-25.

27

28

1    Plaintiff testified that she cannot sit at a computer because of stomach problems, back

2  pain and neck pain.  She explained that she has fibromyalgia, diverticulitis and constant pain in

3  her neck, back, legs and hands, along with fatigue and tiredness.  AR 25-27.

4    Plaintiff also has problems with her bowels, having bowel movements eight times a day.

5  Despite having surgery in 2006 and taking Prilosec, Immodium and Metamucil, she still has to

6  go to the bathroom eight times a day.  At the hearing, Plaintiff was leaning on her crutch handle

7  to relieve pain in her stomach, which feels like a "rototiller."  She said it feels like that

8  constantly, with some days worse than others.  AR 27-29.

9    As part of her medical problems, Plaintiff testified that she has had Valley Fever since

10  1992.  Although she thought that she was well, it appeared in a new blood test.  Plaintiff claimed

11  that it had worsened since 1992, with symptoms of coughing, weakness and aching.  AR 29-30.

12    Plaintiff also reported that she has menopause and is taking Premarin.  She said it affects

13  her ability to work because of profuse sweating, anxiety, and shaking.  She also cannot think

14  straight and has an aching back.  Her inability to think is a concentration problem, which she

15  attributes to menopause and to pain.  She can concentrate 15 minutes at a time.  AR 30-31.

16    In addition, Plaintiff has thyroid disease and takes medicine for it.  She has extreme

17  tiredness because of the disease.  She does not sleep well at night and does not wake up

18  refreshed.  Plaintiff said that pain primarily keeps her from sleeping well at night.  To relieve the

19  pain, she props herself on pillows and takes pain medication.  Plaintiff affirmed that she has bad

20  side effects from her medicine.  The antibiotics she takes for her stomach make her nauseous.

21  After taking the medicine, she will be nauseated for two hours.  AR 31-33.

22    In response to questions about her day, Plaintiff testified that she lies down six to eight

23  hours in an eight-hour day.  She is on her feet standing or walking about two hours a day.  She

24  cannot sit in a chair and eat dinner.  Typically, she can sit 15 minutes before she has to get up.

25  The heaviest thing that she can lift is a box of Kleenex with her left hand and a gallon of milk

26  with her right hand.  She can use her hands to type or write for 10 minutes.  She can grasp and

27  handle things for three minutes.  AR 33-36.

28

3

1  During a normal day, Plaintiff watches TV and tries to read.  It hurts her hands to hold

2  books.  She is able to dress and bathe herself after she takes pain medication.  She can make a

3  bowl of soup, but cannot make a full dinner because it takes too long.  She carries her clothes to

4  the laundry.  It takes her all day to do laundry because she lies down and forgets.  She attributes

5  the forgetfulness to her medical condition.  AR 36-37.

6  Plaintiff testified that she has two dogs and a horse.  Her mom helps her feed the horse

7  because she can't carry the food.  She used to ride a couple times a week, but it has been two

8  years since she last rode.  She also has stopped or cut back on her sewing.  AR 37-39.

9  Six months before the hearing, Plaintiff went bank fishing.  They parked right against the

10  water and all they had to do was throw the line in.  She fished about three hours, but not without

11  breaks.  It was a one time thing.  AR 39-40.

12  Plaintiff also has stopped or cut back on playing her guitar and leading music at church.

13  She used to go to church three times a week, twice on Sunday.  Now, she doesn't go to church or

14  play the guitar because of pain.  AR 40-41.

15  In response to questions from the ALJ, Plaintiff testified that she could sit for one hour

16  and 15 minutes total in an eight hour period.  AR 42.  She testified about her past work.  In 1993,

17  she worked as a housekeeper.  She did not lift more than 50 or 20 pounds.  From 1992 to 1995,

18  she also worked at home as a bookkeeper for her mother's trucking company.  It was a sit down

19  job.  In 1997, she worked as a cashier for J. C. Penney.  She stood up most of the time.  Before

20  that, she worked at a packing house for oranges.  She had to pull boxes down, pack the oranges

21  into patterns and slide the box.  She did not lift boxes. AR 44-46.

22  The VE also testified.  In response to questions from the ALJ, the VE provided

23  information regarding Plaintiff's past work.  The VE reported that the housekeeping job is in the

24  DOT as cleaner, housekeeping, and is classified as light and two, which is unskilled.  The sales

25  clerk is in the DOT as light and three, first level semi-skilled.  The orange packer job is in the

26  DOT as packer, ag produce, and is classified as medium and two, which is unskilled.  It was

27  likely performed at the light level because Plaintiff testified that she would not lift the box.  AR

28  47-48.

With regard to the bookkeeper job, the VE picked account clerk because of the duties described in the exhibit. It is sedentary and five, which is first level skilled. Plaintiff would have had office skills, writing skills and written and verbal communication skills that would transfer to other clerical types of positions at the sedentary or light level. AR 48. For example, Plaintiff's skills would be transferable to a general clerk occupation, which is light, SVP three, with 23,533 jobs in California and about nine times that in the United States. Another example is mail clerk, which is light, SVP four, with 8,063 jobs in California and about nine times that in the United States. The VE testified that a third example is file clerk, which is light, SVP three, with 34,657 jobs in California and about nine times that in the United States. AR 48-49.

For sedentary positions, the VE testified that Plaintiff's skills would be transferable to order clerk, which is sedentary, SVP four and semi-skilled, with 10,903 jobs in California and about nine times that in the United States. Another example would be receptionist, which is sedentary, SVP four with 79,771 jobs in California. AR 49-50.

For the first hypothetical, the ALJ asked the VE to assume an individual 54 years of age with a twelfth grade education and Plaintiff's past relevant work experience. This individual has a combination of severe impairments and retains the residual functional capacity to lift and carry 20 pounds occasionally, 10 pounds frequently, and to stand, walk and sit six hours each. This individual occasionally can climb, stoop, crouch and crawl. With these limitations, the VE testified that this person could perform Plaintiff's past work as account clerk. This person could do the packer work as performed, but not as it is in the DOT at the medium level. This person also could do the sales clerk job, but should not do the housekeeping work. AR 50.

For the second hypothetical, the ALJ asked the VE to assume an individual with the same vocational parameters and a combination of severe impairments. The ALJ asked the VE to further assume that this individual retains the residual functional capacity to lift and carry a gallon, or approximately eight pounds. This individual also retains the ability to stand two hours maximum, walk two hours maximum and sit one hour and 15 minutes. This individual could engage in fine manipulation for 10 minutes at a time and would have difficulty concentrating more than 15 minutes at a time. This individual also would need to take a restroom or bathroom

break approximately eight times per day during a work shift.  Given these limitations, the VE testified that such an individual could not perform Plaintiff's past work or any other jobs that exist in the national economy.  AR 50-51.

For the third hypothetical, Plaintiff's counsel asked the VE to add to the first hypothetical that the individual needs bathroom breaks approximately eight times a day.  The VE testified that if she had to take a break each hour on the job, she would likely be fired.  AR 51.

For the fourth hypothetical, Plaintiff's counsel asked the VE to take hypothetical one and add that she can reach, feel and grasp 10 percent of the day, can handle 20 percent of the day and can push/pull 5 percent of the day.  With those upper extremity restrictions, the VE testified that an individual would not be able to do work that exists in the national economy.  AR 51-52.

In response to questions from Plaintiff's counsel, the VE testified that she did not have any information about how much income was received in Plaintiff's bookkeeping position other than what was in the work history report, which stated that she earned $8 an hour, 5 to 7 hours per day, 5 days per week.  AR 52.

Plaintiff responded to additional questions from the ALJ.  She testified that her mother bought feed for her horse, paid her electricity bill, gave her a roof over head, paid for her truck and bought food for her in exchange for help with straightening out and paying taxes for the trucking company.  In response to questioning from her attorney, Plaintiff testified that she did not receive over $500 gross benefit.  During the three year period, there were more months that she was not working than months she was working.  She did not do bookkeeping work every month because she was trying to have another job and was raising her daughter.  She thought that she worked four months a year during tax season.  AR 53-55.

Medical Record

A June 23, 2005, abdominal sonographic survey was normal.  AR 402.

On February 2, 2006, Plaintiff saw Dr. R. Douglas Owen, D.O., for her fibromyalgia and follow-up of her hepatitis.  With regard to her hepatitis, Plaintiff reported feeling better with decreased nausea.  Dr. Owen opined that it was "improved."  AR 334.

On April 24, 2006, Plaintiff saw Dr. Owen for menopause symptoms.  On examination, she had significant "menopausal findings."  AR 332-33.

On May 1, 2006, Plaintiff complained of a stomach ache.  Dr. Owen assessed her with diverticulosis, advising her to increase the bulk in her diet and to take Metamucil or Citrucel daily.  She was prescribed Cipro.  AR 327.

On June 23, 2006, Plaintiff saw Dr. Owen for follow-up on her fibromyalgia.  She reported doing about the same and received prescription refills for ultram.  AR 327.

On June 26, 2006, Plaintiff saw Dr. Owen for follow-up on her chronic pain, which was described as "[s]table."  AR 327.

An x-ray of Plaintiff's left hand taken on July 26, 2006, was normal.  AR 225.

On July 29, 2006, Emanuel Dozier, M.D., completed a consultative internal medicine evaluation.  Plaintiff complained of valley fever, fibromyalgia and chronic diverticulosis.  On physical examination, she ambulated down the hall with no signs of pain and a normal steppage gait.  She was able to sit during the interview without discomfort and transfer on and off the examination table without assistance.  AR 221.  She had local tenderness in her back "with fibril distribution with tenderness over the trapezius and over the supraspinatus and interscapulare Rhomboid area."  AR 222.  She also had some local tenderness over the sacroiliac joints of the lower back.  In her extremities, she had local tenderness over the epicondyles, wrists, and metacarpal phalangeal joints of both hands and over the medial compartment of both knees.  She did not use an assistive device.  Her motor strength was 5/5 in her upper and lower extremities.  Her grip strength was 5/5 bilaterally.  AR 222-23.

Dr. Dozier diagnosed fibromyalgia with history of valley fever (resolved) and history of chronic diverticular disease.  He opined that she should have postural restrictions on frequent bending, stooping, and crouching.  She would not have manipulative restrictions or restrictions on special senses.  She would have environmental restrictions on climbing ladders, working on inclined planes or working on uneven terrain.  She should be able to occasionally lift 20 pounds and frequently 10 pounds.  She should be able to stand and/or walk for six hours and sit for six hours.  AR 223-24.

1    On August 25, 2006, a heavy table fell onto Plaintiff's left foot, but x-rays showed no

2  fracture or dislocation.  While in the emergency room, she reported chronic pain issues and

3  taking Darvon for 14 years.  A chart addendum indicated that Plaintiff was given information on

4  drug treatment programs as she has problems with prescription meds.  AR 285-92.

5    On September 27, 2006, Mary K. McDonald, Ph.D., completed a consultative

6  psychological evaluation.  Plaintiff denied that any of the reasons she was applying for disability

7  pertained to mental health issues or psychiatric issues.  During the clinical interview, Plaintiff

8  complained of valley fever and pain in her lungs, but reported that she continued to smoke a pack

9  of cigarettes every two days.  When discussing her past work, Plaintiff stated that she worked at

10  J.C. Penney's for nearly a year, but quit due to stomach pain.  Plaintiff also added that she was

11  accused of stealing money, but was not fired because of this allegation.  Following psychological

12  assessments, Dr. McDonald opined that Plaintiff did not demonstrate cognitive or psychiatric

13  impairment.  AR 225-28.

14    On October 20, 2006, R. D. Fast, a state agency physician, completed a Physical Residual

15  Functional Capacity Assessment form.  Dr. Fast opined that Plaintiff could lift and/or carry 20

16  pounds occasionally, 10 pounds frequently, could stand and/or walk about six hours in an 8-hour

17  workday, could sit about six hours in an 8-hour workday and could push and/or pull without

18  limitation.  She frequently could balance and occasionally could climb, stoop, kneel, crouch and

19  crawl.  She had no manipulative, visual, communicative or environmental limitations.  AR 235-

20  39.

21    On October 31, 2006, a state agency physician opined that Plaintiff had no medically

22  determinable mental impairment.  AR 240-50.

23    On November 26, 2007, Dr. Owen admitted Plaintiff to the hospital following complaints

24  of substernal chest pain.  A coronary angiography and an echocardiogram were normal.  A CT

25  scan of the chest also was negative.  Plaintiff was advised to discontinue smoking, to reduce

26  weight and to exercise.  AR 255-258, 265, 330.

27    On January 23, 2007, Plaintiff reported blood in her stools for two days.  Dr. Owen

28  advised her to increase the bulk in her diet.  AR 325.

1    On February 13, 2007, Plaintiff was seen for chronic pain.  Dr. Owen noted she had done

2    well with Darvon.  AR 326.

3    On February 27, 2007, Plaintiff underwent a full colonoscopy following complaints of

4    intermittent rectal bleeding associated with change of bowel habits and lower abdominal pain.

5    The colonoscopy revealed three polyps, but no endoscopic evidence of diverticulitis in the

6    sigmoid colon region, and was otherwise normal.  AR 341-44.  The biopsy showed benign

7    mucosa with chronic inflammation.  The inflammatory changes were not diagnostic of

8    inflammatory bowel disease.  AR 349-50.

9    On February 28, 2007, Plaintiff underwent an esophagogastroduodensocpy ("EGD") to

10   rule out peptic ulcer disease versus possible esophageal varices.  The EGD revealed mild distal

11   reflux esophagitis, distal esophageal erosion, gastritis, and severe duodenitis.  Her persistent

12   epigastric pain could not be fully explained by the findings.  She was directed to start Prevacid.

13   AR 345-47.  The endoscopy laboratory report was negative.  AR 351.

14   In June 2007, Dr. Owen completed a Questionnaire and opined that Plaintiff's medical

15   problems precluded her from performing any full-time work at any exertional level.  He reported

16   that Plaintiff had pain and diffuse myalgia, but there were no objective findings upon which he

17   based his opinion.  He further opined that she could sit three hours and could stand/walk one

18   hour in an 8-hour period.  She must lie down or elevate her legs intermittently.  He also indicated

19   that she had marked back pain.  AR 379.

20   In July 2008, Dr. Owen completed a Questionnaire and again opined that Plaintiff's

21   medical problems precluded her from performing any full-time work at any exertion level.  He

22   identified her primary impairment as pain, but indicated that there were no objective findings on

23   which he based his opinion.  He further opined that Plaintiff could sit one hour and stand/walk 30

24   minutes during an 8-hour work day.  She must lie down or elevate her legs intermittently.  Dr.

25   Owen reported that Plaintiff had pain at her back and takes sedating meds.  She also had

26   fibromyalgia and neuropathy affecting her hands bilaterally and she frequently could lift one to

27   three pounds.  Dr. Owen believed she had been disabled since 2002.  In relation to her

28

fibromyalgia, Dr. Owen identified, in a check-the-box format, that Plaintiff had tender points in 14 of the 18 sites on digital palpation.  AR 380-81.

On March 13, 2008, Plaintiff again saw Dr. Owen for a check of her fibromyalgia and pain.  He "[e]njoined regular exercise."  AR 412.

On April 9, 2008, Plaintiff reported to Dr. Owen that she was kicked in the back by a horse and a second horse later ran into her.  She reportedly gave the horses away.  AR 411.

On July 30, 2008, Plaintiff saw Dr. Owen for her fibromyalgia and pain.  He "[e]njoined regular exercise," completed a form for disability and refilled her ultram and prevacid.  AR 411.

On September 2, 2008, Dr. Owen assessed Plaintiff with fibromyalgia and again "[e]njoined regular exercise."  Plaintiff said she was experiencing increased stress because her ex-husband was staying at the house and she had a pending disability hearing.  AR 410.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairment of fibromyalgia.  AR 10. Despite this impairment, Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently.  She could sit, stand, and walk for six hours out of an 8-hour day and occasionally could climb, stoop, crouch and crawl.  AR 11. Given this RFC, the ALJ concluded that Plaintiff could perform her past relevant work as an accounts clerk and a sales clerk.  The ALJ further found that if Plaintiff could not perform her past relevant work, there were jobs that existed in significant numbers in the national economy that she could perform.  Alternatively, the ALJ determined that she had acquired work skills that were transferable to other occupations with jobs existing in significant numbers in the national economy.  AR 13-14.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance.  Sorenson v.

1   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

2   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

3   401.  The record as a whole must be considered, weighing both the evidence that supports and

4   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

5   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

6   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

7   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

8   Commissioner applied the proper legal standards, and if the Commissioner's findings are

9   supported by substantial evidence.  *See* *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d

10  509, 510 (9th Cir. 1987).

11  ## REVIEW

12      In order to qualify for benefits, a claimant must establish that she is unable to engage in

13  substantial gainful activity due to a medically determinable physical or mental impairment which

14  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

15  U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of

16  such severity that she is not only unable to do her previous work, but cannot, considering her age,

17  education, and work experience, engage in any other kind of substantial gainful work which

18  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

19  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

20  Cir. 1990).

21      In an effort to achieve uniformity of decisions, the Commissioner has promulgated

22  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

23  C.F.R. §416.920 (a)-(g).  Applying the process in this case, the ALJ found that Plaintiff: (1) has

24  not engaged in substantial gainful activity since her application date; (2) has an impairment or a

25  combination of impairments that is considered "severe" (fibromyalgia) based on the requirements

26  in the Regulations (20 CFR § 416.921); (3) does not have an impairment or combination of

27  impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P,

28  Regulations No. 4 ("Listing"); (4) can perform her past relevant work; and (5) there are jobs

1    existing in significant numbers in the national economy that she can perform.  Alternatively, she

2    acquired work sills from past relevant work that were transferable to other occupations with jobs

3    existing in significant numbers in the national economy.  AR 8-14.

4         Here, Plaintiff contends that the ALJ erred (1) in failing to consider her combined

5    impairments; (2) in finding that her impairments do not meet or equal a Listing; (3) in evaluating

6    Dr. Owen's opinion; (4) in the step-four finding that she had past relevant work; and (5) in

7    rejecting her credibility.

8                                          **DISCUSSION**

9    A.    Step Two: Combined Impairments

10        Plaintiff argues that the ALJ failed to consider the effects of her Hepatitis C, in

11   combination with her other impairments, at step two of the sequential evaluation process.

12        Although the medical record in this case contains a diagnosis of Hepatitis C, no treating

13   or examining physician identified any corresponding limitations or resulting effects of this

14   condition on Plaintiff's ability to work.[2]  A diagnosis alone does not establish a limitation in the

15   ability to work.  *See, e.g., Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (claimant must

16   show more than the mere presence of a condition or ailment a step two); *Atkinson v. Astrue*, 2009

17   WL 3734176, *2 (C.D.Cal. Nov. 5, 2009) (mere diagnosis of an impairment, without more, does

18   not establish that the impairment is severe or disabling).     Insofar as Plaintiff argues that "the

19   presence of . . . hepatitis C lends credence to her allegations of fatigue," this is mere speculation.

20   Opening Brief, p. 5.  In her testimony, Plaintiff attributed her fatigue to other medical conditions,

21   not to Hepatitis C.  AR 27-28, 32.  Indeed, Plaintiff never mentioned Hepatitis C at the hearing

22   even when asked directly about her diagnoses and medical problems.  AR 26-31.  Accordingly,

23   the Court finds that the ALJ's omission of Hepatitis C is not error.

24

25

26        [2]As noted by the Commissioner, Plaintiff argues elsewhere in her brief that the Court should credit the
     opinion of her treating physician, Dr. Owen.  Even crediting his opinion, however, Dr. Owen never identified
27   Hepatitis C to support his conclusion that Plaintiff was precluded from full-time work at any exertional level.  AR
     379-81.
28

1   Even if the ALJ were required to mention it, such failure is harmless.  *See Robbins v. Soc.*

2   *Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2008) (stating that error is harmless if it is

3   inconsequential to the ultimate determination).  If the ALJ accepted the diagnosis, there is no

4   evidence it would have caused more than a minimal impact on Plaintiff's ability to work.  As a

5   practical matter, there is no evidence in the treatment records that Plaintiff was experiencing any

6   difficulties, much less fatigue, related to the diagnosis.  As previously indicated, Plaintiff herself

7   did not mention it at the hearing despite being questioned about her medical problems by both

8   the ALJ and her legal counsel.

9   B.      Step Three: Listing of Impairments

10   Plaintiff argues that the ALJ applied an improper legal standard at step three because her

11   combined impairments are at least medically equivalent to a listed impairment.  Specifically,

12   Plaintiff contends that her impairments equal a Listing for musculoskeletal impairments or

13   Listing 5.01 (Digestive System).

14   The listing of impairments describes impairments that are considered "severe enough to

15   prevent an adult from doing any gainful activity."  20 C.F.R. § 416.925(a).  Most of these

16   impairments are permanent or expected to result in death.  20 C.F.R. § 416.925(c)(4).  For all

17   other impairments, the evidence must show that the impairment has lasted or is expected to last

18   for a continuous period of at least 12 months.  *Id.*  If a claimant's impairment meets or equals a

19   listed impairment, he or she will be found disabled at step three without further inquiry.  20

20   C.F.R. § 416.920(a)(4)(iii).

21   To demonstrate that an impairment matches a listed impairment, the claimant must show

22   that the impairment meets all of the medical criteria in a Listing.  *Sullivan v. Zebley*, 493 U.S.

23   521, 530 (1990).  "An impairment that manifests only some of those criteria, no matter how

24   severely, does not qualify."  *Id.*  To "equal" a listed impairment, a claimant must establish

25   symptoms, signs and laboratory findings "at least equal in severity and duration" to the

26   characteristics of a relevant listed impairment.  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.

27   1999); 20 C.F.R. § 416.926(a).

28

In his decision, the ALJ concluded that Plaintiff's impairment did not meet or medically equal one of the listed impairments.  AR 11.  Plaintiff claims that, in combination, her fibromyalgia, duodenitis and hepatitis C satisfied one of the Listings.  Despite this claim, Plaintiff does not to point to any specific evidence that her conditions meet or equal a Listing.  Instead, Plaintiff essentially contends that it was the ALJ who erred by failing to provide a discussion of why Plaintiff did not satisfy a Listing.

In _Marcia v. Sullivan_, 900 F.2d 172 (9th Cir. 1990), the Ninth Circuit held that an ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support such a conclusion.  _Id._ at176 (holding that ALJ erred by failing to consider evidence of equivalence).  Plaintiff argues that the ALJ erred under _Marcia_ by failing to elaborate on the conclusion that her combined impairments were not medically equal to any listed impairment.

Unlike the claimant in _Marcia_, Plaintiff has offered no theory, plausible or otherwise, as to how her fibromyalgia, duodenitis, and hepatitis C combined to equal a listed impairment.  The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." _Gonzalez v. Sullivan_, 914 F.2d 1197, 1201 (9th Cir.1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings).  The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." _Burch v. Barnhart_, 400 F.3d 676, 638 (9th Cir. 2005).  This is particularly true where the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. _Lewis v. Apfel_, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

In an apparent attempt to establish equivalence, Plaintiff points to Dr. Owen's opinions that, when her combined impairments are considered, she is unable sustain even sedentary work.  This argument is flawed for several reasons.  First, Dr. Owen did not identify any combined

impairments or cite duodenitis or hepatitis C to support his opinions regarding Plaintiff's ability

to work.  AR 380-81, 382.  Dr. Owen admitted that his opinions were not based on any objective

findings.[3]  AR 380-81, 382.  Second, Dr. Owen proffered no medical evidence to show how any

impairment equaled a Listing.  A finding of equivalence must be based on medical evidence.  20

C.F.R. § 416.929(d)(3).  Third, and finally, Plaintiff fails to explain how Dr. Owen's opinions

support a finding that her fibromyalgia meets any Listing.

        Plaintiff's argument is without merit and must be denied.

C.      Treating Physician Opinion

        Plaintiff contends that the ALJ improperly rejected the residual functional capacity

assessment of her treating physician, Dr. Owen.  The Commissioner counters that the ALJ may

properly disregard a treating physician's opinion.

        Generally, the opinions of treating doctors should be given more weight than the opinions

of doctors who do not treat the claimant.  _Reddick v. Chater_, 157 F.3d 715, 725 (9th Cir.1998);

_Lester v. Chater_, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not

contradicted by another doctor, it may be rejected only for "clear and convincing" reasons

supported by substantial evidence in the record.  _Lester_, 81 F.3d at 830.  Even if the treating

doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without

providing "specific and legitimate reasons" supported by substantial evidence in the record.  _Id._

(quoting _Murray v. Heckler_, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out

a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings.  _Magallanes  v. Bowen_, 881 F.2d 747, 751 (9th

Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own

interpretations and explain why they, rather than the doctor's, are correct.  _Embrey v. Bowen_, 849

F.2d 418, 421-22 (9th Cir.1988).  Therefore, a treating physician's opinion must be given

---

[3]The Court recognizes that fibromyalgia is diagnosed on the basis of a patient's reports of pain and other
symptoms and there are no laboratory tests to confirm the diagnosis.  _See, e.g., Benecke v. Barnhart_, 379 F.3d 587,
589-90 (9th Cir. 2004).  Of importance, however, is that Dr. Owen did not identify any medical evidence in his
opinions to demonstrate that any _other_ impairment, in combination or alone, met or equaled a Listing.

1   controlling weight if it is well-supported and not inconsistent with the other substantial evidence

2   in the record.  *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

3          Here, the ALJ gave greater weight to the opinions of the state agency physicians and the

4   consultative examiner because they were consistent with the bulk of the medical evidence.  AR

5   12.  In contrast, he rejected Dr. Owen's opinion that Plaintiff was precluded from any full-time

6   work.  AR 12, 196-97, 198.  Given the contradictory opinions, the ALJ was required to provide

7   specific and legitimate reasons supported by substantial evidence to reject Dr. Owen's opinion.

8          Plaintiff claims that the ALJ failed to give valid reasons for his rejection of Dr. Owen's

9   opinion.  Plaintiff faults the ALJ for noting that Dr. Owen did not respond to his October 2008

10  letter requesting clarification of his opinions because the ALJ improperly addressed the letter.

11  AR 12, 194.  In response, the Commissioner admits that the address for Dr. Owen was incorrect,

12  but argues that because the letter also was sent to Plaintiff's counsel, the ALJ fulfilled his duty to

13  conduct a proper inquiry by communicating his concerns regarding Dr. Owen's opinion to

14  Plaintiff's counsel.  *See, e.g., Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999) (ALJ satisfied

15  his duty to develop the record by voicing concerns to claimant's counsel that doctor's form was

16  inadequate, requesting additional inquiry into the bases for doctor's opinion and leaving record

17  open).  The Court disagrees.  According to the record, the ALJ did not request that Plaintiff's

18  attorney take action or provide additional information.  The ALJ merely sent Plaintiff's counsel a

19  courtesy copy of the October 2008 letter.  Thus, the rejection of Dr. Owen's opinion based on his

20  failure to respond to the ALJ's October 2008 letter is not legitimate.

21         Furthermore, if the ALJ found that Dr. Owen's reports lacked specificity or that he

22  required more information, then the ALJ had a duty to inquire further regarding the bases of the

23  opinion.  *See Smolen v.Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  In this case, it is clear from

24  the contents of the ALJ's October 2008 letter that he required additional information regarding

25  the bases for Dr. Owen's opinion.  When the ALJ did not receive a response, more than likely

26  due to the incorrect address, his duty to the develop the record was not excused.

27         In social security cases, the law is well-settled that the ALJ has an affirmative " 'duty to

28  fully and fairly develop the record and to assure that the claimant's interests are considered.' "

1  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001) (citations omitted). "This duty extends

2  to the represented as well as to the unrepresented claimant." *Id.*; *see also Celaya v. Halter*, 332

3  F.3d 1177, 1183 (9th Cir. 2003) (noting that the ALJ has an affirmative "duty to fully and fairly

4  develop the record and to assure that the claimant's interests are considered ... even when the

5  claimant is represented by counsel") (ellipsis in original; quoting *Brown v. Heckler*, 713 F.2d 441,

6  443 (9th Cir.1983)).  In this instance, the ALJ undertook no additional efforts to obtain a response

7  from Dr. Owen or to procure any additional information for the record.

8           Plaintiff next faults the ALJ's assertion that Dr. Owen's treatment notes contradict his

9  functional capacity assessment.  Plaintiff claims that the ALJ's reasoning "evidences [his]

10 ignorance of fibromyalgia."  Opening Brief, p. 17.  The Commissioner counters that the ALJ

11 properly rejected Dr. Owen's functional capacity limitations because he admitted that there were

12 no objective findings to support his opinion.

13          The ALJ's failure to adequately develop the record regarding the bases of Dr. Owen's

14 opinion necessarily undermines the determination that Dr. Owen's treatment records are

15 inconsistent with his determination of Plaintiff's functional limitations.  Additionally, the ALJ's

16 criticism of Dr. Owen's report that Plaintiff had pain and diffuse myalgia with no objective

17 findings and generally unremarkable physical examinations suggests a misunderstanding

18 regarding the nature of fibromyalgia.[4]  AR 12.  The Ninth Circuit has recognized that

19 fibromyalgia's cause is unknown, there is no cure and it is diagnosed "entirely on the basis of

20 patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590.  Additionally, the Ninth

21 Circuit has acknowledged that fibromyalgia's symptoms are entirely subjective and that there are

22 no laboratory tests for its presence or severity.  *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir.

23 2001) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).  Courts have found it error

24 for an ALJ to discount a treating physician's opinion as to resulting limitations due to a lack of

25 objective evidence for fibromyalgia.  *Benecke*, 379 F.3d at 594 and n.3; *see also Galvan v. Astrue*,

26 2010 WL 529440, *10 (E.D.Cal. Feb. 9, 2010) (ALJ's discounting of physicians' opinions simply

27

28          [4]The ALJ appears to ignore Dr. Owen's report of 14 trigger points in his 2008 opinion.  AR 380-81.

                                                      17

because the doctors failed to checkoff or delineate the 18 trigger points identified by the American College of Rheumatology did not satisfy the requirement of citing specific and legitimate reasons supported by substantial evidence in the record); *Guevara v. Astrue*, 2009 WL 650736, *6 (C.D.Cal. Mar. 11, 2009) (noting that due to the nature of fibromyalgia, the absence of laboratory or clinical findings is not a legitimate basis for rejecting a treating physician opinion); *but see Yunt v. Comm'r of Soc. Sec.*, 2008 WL 596226, *2 (E.D.Cal. Mar. 3, 2008) (concluding it was reasonable for ALJ to require treating physician's assessment of claimant with fibromyalgia to be supported by objective findings, such as grip strength and range-of-motion test data).

Based on the above, the ALJ erred by failing to develop the record and by failing to provide specific and legitimate reasons to reject Dr. Owen's residual functional capacity assessment.  As discussed more fully below, the matter will be remanded to remedy these defects.

D.      Step Four:  Past Relevant Work

Plaintiff contends that the ALJ erred in finding that she could return to her past relevant work as an "accounts clerk."  Plaintiff claims that her work as a part-time bookkeeper was not substantial gainful activity because it was seasonal and she did not earn enough.

Past relevant work is work that was "done within the last 15 years, lasted long enough for [a claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 416.965(a). Past relevant work can be part time, *Katz v. Sec'y of Health & Human Servs.*, 972 F.2d 290, 292 (9th Cir.1992), totally unpaid, *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir.1990), and merely seasonal, *Byington v. Chater*, 76 F.3d 246, 250 (9th Cir.1996).  It need only require significant mental and physical activities to be substantial. 20 C.F.R. § 416.972(a). Likewise, to be gainful it need only be the kind of work "usually done for pay or profit[.]" 20 C .F.R. § 416.972(b). "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity." Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir.2001). The regulations specifically state that "[y]our earnings may show you have done substantial gainful activity" but "the fact that your earnings were not substantial will not necessarily show that you are not able to do substantial gainful activity." 20 C.F.R. § 416.974(a)(1).

18

1    As Plaintiff notes, the ALJ found it "unclear" whether Plaintiff's past relevant work
2 comprised "substantial gainful activity."  Despite this finding, he proceeded to accept the VE's
3 testimony that Plaintiff could return to her past relevant work as an accounts clerk and as a sales
4 clerk.  The Court finds that the ALJ erred by failing to make a threshold finding as to whether
5 Plaintiff's prior jobs met the definition of past relevant work.[5]  Therefore, his conclusion that
6 Plaintiff could perform her past relevant work is unsupported.

7    The Court recognizes that an erroneous finding that Plaintiff can perform past relevant
8 work may be harmless as long as the RFC and step five evaluation are legally sufficient and based
9 on substantial evidence.  _Stout_, 454 F.3d 1050, 1055 (9th Cir. 2006).  As discussed above, the
10 Court has concluded that the ALJ improperly evaluated the RFC assessment of Dr. Owen.
11 Although the Court has not concluded that the record is devoid of evidence that could provide a
12 basis for rejecting Dr. Owen's opinion, proper consideration of that opinion may have an impact
13 on the resulting RFC.

14    As to the step five evaluation, the burden shifts to the Commissioner to show that there is
15 a significant number of jobs in the national economy that the claimant can perform.  _Kail v._
16 _Heckler_, 722 F.2d 1496, 1497-98 (9th Cir.1984).  The ALJ may use the testimony of a vocational
17 expert to identify appropriate jobs.  SSR 00-4p.  The hypothetical posed to the vocational expert
18 must accurately reflect the claimant's physical and mental limitations that are determined credible
19 and supported by the record.  The ALJ may exclude restrictions in the hypothetical that are
20 unsupported by the record or discredited as unreliable.  _Osenbrock v. Apfel_, 240 F.3d 1157,
21 1162-63 (9th Cir.2001); _Embrey v. Bowen_, 849 F.2d 418, 423 (9th Cir.1988); _DeLorme v._
22 _Sullivan_, 924 F.2d 841, 850 (9th Cir.1991).

23

24

25    [5]Based on this determination, it is unnecessary to address the remainder of Plaintiff's arguments regarding
the ALJ's step four finding.  Notwithstanding, the Court considers Plaintiff's argument that she cannot perform her
26 past work as a sales clerk because, as performed, the job required her to stand and walk for up to 8 hours, which is
more than the 6 hours identified in the RFC.  The Commissioner counters that based on vocational testimony, the
27 occupation of sales clerk is light work as generally performed, which involves standing or walking for 6 hours.  As
the Commissioner points out, an ALJ can properly find a claimant to be capable of performing her past relevant work
28 when she can perform it as it is generally performed in the national economy.  Social Security Ruling 82-61.

1   As the ALJ improperly rejected Dr. Owen's opinion, Plaintiff may have additional

2   functional limitations that were not included in the hypotheticals posed to the VE.  In such an

3   instance, the VE's testimony has no evidentiary value.  *See, e.g., Carmickle v. Comm'r Soc. Sec.*

4   *Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008).

5        Plaintiff contends that the VE's testimony additionally was flawed.  In particular, Plaintiff

6   argues that the VE's identification of alternate work that she could perform is defective because it

7   was based on the assumption that Plaintiff had acquired transferable skills from past relevant

8   work.  The crux of Plaintiff's argument is that she did not have "past relevant work" that would

9   impart transferable skills.  The Court has recognized the ALJ's failure to make a threshold finding

10  that Plaintiff's past jobs constituted past relevant work.  This failure undermines the ALJ's

11  determination, in reliance on the VE's testimony, that she had acquired work skills from past

12  relevant work as an accounts clerk that are transferable to other occupations in the national

13  economy.  AR 13.

14       Plaintiff also challenges the ALJ's alternate step-five finding that she had transferable

15  skills and a finding of "not disabled" was appropriate under Medial Vocational Rule 202.15 (the

16  "grids").  Plaintiff asserts that this rule is applicable to claimants under age 55, but she turned 55 a

17  few weeks before the ALJ issued his decision.  Because Plaintiff is now more than 55 years old

18  (born in 1954), the issue of which age category she should be placed in is moot, i.e., her age

19  category is no longer a borderline case (although the ALJ should determine whether Plaintiff

20  became disabled before turning 55).  On remand, and if necessary at step-five, the ALJ should

21  consider Plaintiff in the appropriate age category for the purpose of determining whether she is

22  disabled.  *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000).

23  E.   Credibility Analysis

24       Plaintiff next argues that the ALJ improperly rejected her credibility.  In *Orn v. Astrue*,

25  495 F.3d 625, 639 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for

26  evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

27           An ALJ is not "required to believe every allegation of disabling pain" or other
             non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).
28           However, to discredit a claimant's testimony when a medical impairment has been

established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" _Morgan_, 169 F.3d at 599 (quoting _Lester_, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." _Id._ Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." _Id._

Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. _See_ 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); _see Daniels v. Apfel_, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." _Fair_, 885 F.2d at 603; _see also Thomas_, 278 F.3d at 958-59.

Here, the ALJ discredited Plaintiff's testimony because she had "not received treatment consistent with a chronic pain syndrome such as biofeedback, acupuncture, use of a TENS unit, physical therapy, or attendance at a pain management clinic." AR 11.

Plaintiff argues that the ALJ improperly discredited her pain testimony. The Court agrees, but for different reasons than Plaintiff advances. Plaintiff contends that the ALJ erred because she has fibromyalgia, not chronic pain syndrome. This is not compelling. As the Ninth Circuit has explained, common symptoms of fibromyalgia include "chronic pain." _Beneke_, 379 F.3d at 589; _Rollins_, 261 F.3d at 855 (one of principal symptoms of fibromyalgia is "pain all over"); _Sarchet_, 78 F.3d at 306 (same). Plaintiff has consistently complained of pain resulting from her medical problems and admitted to taking pain medications. AR 25-27, 31-33, 36-37. Further, Plaintiff's treating doctor both identified and treated her for chronic pain. AR 326, 327, 379.

Plaintiff also asserts that the ALJ cannot discount her credibility because she has no money to afford the identified treatment. As Plaintiff correctly suggests, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." _Orn_, 495 F.3d at 638 (citing _Gamble v. Chater_, 68 F.3d 319, 321 (9th Cir.1995)). Based on the medical record, however, there is no indication that Plaintiff lacked funds to obtain treatment for the period between March 2006 and September 2008. Plaintiff's citation to a letter evidencing a lack of money does not undermine this conclusion. AR 200. The letter is dated

January 22, 2009, and states that her financial situation "has recently gotten grave" because her mother's disability payments ran out in November 2008.  There is no evidence that she was unable to afford treatment or medications prior to that time.

Nonetheless, when Plaintiff's treatment is assessed in the context of fibromyalgia, the ALJ's determination that Plaintiff was not undergoing certain treatments is not a clear and convincing reason for discrediting her pain allegations.  _Smolen_, 80 F.3d 1273, 1283-84 (9 th Cir. 1996) (absent evidence of malingering, ALJ may reject claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so).  The record clearly reflects that Plaintiff was taking medications for her fibromyalgia.  Given the nature of fibromyalgia, a claimant's use of conservative treatment in the form of pain medications is not a sufficient reason to reject her pain allegations.  _See Olguin v. Astrue_, 2009 WL 4641728 (C.D.Cal. Dec. 2, 2009); _Cota v. Comm'r of Soc. Sec._, 2009 WL 900315 (E.D.Cal. Mar. 31, 2009).  Additionally, there is no record evidence showing that the other treatments the ALJ listed, i.e., biofeedback, acupuncture or a TENS unit, were suggested or prescribed for Plaintiff.

Insofar as the ALJ discounted her credibility because "there [are] little to no objective findings to support her allegations," this also is not a clear and convincing reason.  AR 12.  With regard to Plaintiff's fibromyalgia, the ALJ erred in "effectively requir[ing] 'objective' evidence for a disease that eludes such measurement." _Beneke_, 379 F.3d at 594 (quoting _Green-Younger v. Barnhart_, 335 F.3d 99, 108 (2d Cir.2003); _see also Sarchet_, 78 F.3d at 307 (recognizing that the absence of objective evidence of fibromyalgia such as swelling of the joints "is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced.").  Given that no objective tests can conclusively confirm the disease, the lack of objective findings does not undermine Plaintiff's credibility.  Moreover, the ALJ did not acknowledge Dr. Owen's determination that Plaintiff met the relevant diagnostic criteria (trigger points) for fibromyalgia.  AR 380-81.

Based on the above, the Court finds that the ALJ's credibility findings are unsupported.

F.     Remand

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

The Court finds that additional proceedings can remedy the ALJ's errors and therefore REMANDS the action for further proceedings.  On remand, the ALJ should adequately explain his treatment of Dr. Owen's opinion, and where the record is unclear or inadequate, gather additional information.  Remand also is appropriate to allow the ALJ to evaluate the medical record regarding Plaintiff's fibromyalgia and to reevaluate Plaintiff's credibility.  If necessary, the ALJ also should (1) make the appropriate findings at step four as to whether Plaintiff has past relevant work and/or transferable skills; and/or (2) make appropriate findings at step five regarding the availability of alternate work in the national economy.

1

## <u>CONCLUSION</u>

2          Based on the foregoing, the Court finds that the ALJ's decision is not supported by

3   substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for

4   further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter

5   judgment in favor of Plaintiff Kathryn Roberts and against Defendant Michael J. Astrue,

6   Commissioner of Social Security.

7          IT IS SO ORDERED.

8   **Dated:    October 1, 2010**                        **/s/ Dennis L. Beck**
                                                 UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28